STATE EX REL. NEW YORK SHEEP COMPANY *v.* EIGHTH JUDICIAL DISTRICT COURT.

[Submitted July 2, 1894.  Decided July 19, 1894.]

RECEIVER—*Jurisdiction to appoint—Attaching creditor.*—Under subdivision 1 of section 229 of the Code of Civil Procedure, authorizing the appointment of a receiver in an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property to his claim, or between partners or others jointly interested in any property, on application of the plaintiff or of any party whose interest in the property is probable, and where the property or fund is in danger of being lost or materially injured, the district court has no jurisdiction, in actions for debt in which the debtor's property has been attached, to appoint a receiver of the property so attached, on the application of a junior attaching creditor, though it appears that the property may be lost or materially injured if left in the hands of the sheriff. Nor would the court in such case possess jurisdiction to appoint a receiver under subdivision 6 of said section 229, authorizing such appointment "in all other cases where receivers have been heretofore appointed by the usages of courts of equity." (HARWOOD, J., dissenting.)

SAME—*Same—Statutory construction.*—An action for debt in which the defendant's property has been attached is not an action by a creditor to subject any property or fund to his claim, nor is it an action between persons jointly interested in any property or fund, and is therefore not within subdivision 1 of section 229 of the Code of Civil Procedure, authorizing the appointment of a receiver in the cases stated where the property or fund is in danger of being lost or materially injured. (HARWOOD, J., dissenting.)

SAME—*Statutory construction.*—The kinds of action in which a receiver may be appointed under subdivision 1 of section 229 of the Code of Civil Procedure are limited to an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property to his claim, or between partners or others jointly interested in any property, and the concluding language of the provision, "on the application of the plaintiff or of any party whose right or interest in the property is probable, and where the property is in danger of being lost or materially injured," cannot be construed as creating new cases for a receiver, but merely provides on whose application, and under what circumstances, the appointment may be made in the cases already enumerated.

ORIGINAL PROCEEDING.  Application for writ of *certiorari* to review action of the eighth judicial district court in appointing a receiver of relator's property held under writs of attachment.  Writ granted.

Statement of the case prepared by the justice delivering the opinion:

This court is asked to review, upon writ of *certiorari*, the appointment of a receiver by the district court. The facts upon which the application for writ of *certiorari* is made are as follows: On May 31, 1894, in the eighth judicial district court for Cascade county, L. G. Phelps commenced an action against the New York Sheep Company, the relator herein, to recover the two sums of seven thousand three hundred and three dollars and nine cents and five thousand dollars, and interest. On the same day the Severance Mercantile Company commenced an action against the same defendant to recover five thousand nine hundred and thirty-five dollars and twenty-four cents. Two writs of attachment were issued in each case, one to O'Marr, sheriff of Meagher county, and one to Deaton, sheriff of Fergus county. The two sheriffs each levied upon a large band of sheep belonging to the defendant, and in their respective counties. Under each writ, in the hands of each sheriff, the Phelps levy was first, and prior to the levy of the Severance Mercantile Company. Afterwards, the Severance Mercantile Company filed a complaint in the eighth judicial district court against the two sheriffs, O'Marr and Deaton, and Phelps and the New York Sheep Company. That complaint set up the facts above recited, and then stated facts tending to show that the attached property was in danger of being lost or materially injured if it remained in the hands of these two sheriffs. The Severance Mercantile Company asked in that complaint for the appointment of a receiver of the sheep attached, as above described. That appointment was made by the district court. That action by the district court the New York Sheep Company now asks us to review on *certiorari*, claiming that the court had no jurisdiction or power to make the appointment.

*Thompson & Maddox*, for Relator.

The suit of the Severance Mercantile Company against the relator herein, and others, is a suit brought for the express and only purpose of obtaining a receiver. No relief other than the appointment of a receiver is sought. The plaintiff in that suit

is not a judgment creditor with an execution unsatisfied against the corporation, but merely an attaching creditor with a second attachment lien upon the property of the corporation. The appointment of a receiver is an equitable remedy. The plaintiff had a complete, speedy, and efficient remedy at law by attachment, and of which legal remedy it had already availed itself at the time of the commencement of the action for a receiver. As authority for the appointment of a receiver plaintiff relied upon the first subdivision of section 229 of the Code of Civil Procedure, providing that "a receiver may be appointed by the court in which an action is pending, or by a judge thereof: First, . . . . by a creditor to subject any property or fund to his claim." This section clearly requires an action pending, not a direct suit for the appointment of a receiver, but a pending action as ancillary to which the receivership is sought. An action by a creditor to subject any property or fund to his claim is a creditor's bill, in aid of which a receiver may be appointed. But plaintiff's action was a direct suit having for its specific and only purpose the appointment of a receiver. It possesses no attribute or element of a creditor's bill. A creditor's bill may be maintained where relief by execution at law is ineffectual; as for the discovery of assets, to reach equitable interests not subject to levy and sale at law, and to set aside fraudulent conveyances and obstructions. (3 Pomeroy's Equity Jurisprudence, § 1415.) Furthermore, no judgment has been obtained. While it is not always an essential preliminary to a creditor's bill that an execution be returned unsatisfied, it is held as an almost universal rule that a judgment must at least be obtained before the institution of a suit of this character. This case is not within the exceptions to this rule. (4 Am. & Eng. Ency. of Law, 574, 575, and cases cited in note 1.) It is clear that plaintiff's case does not come within any of the first five subdivisions of section 229. The sixth subdivision permits the appointment of a receiver "in all other cases where receivers have heretofore been appointed by the usages of courts of equity." It has been within the usages of courts of equity to appoint receivers of the property of corporations in suits prosecuted by private parties. (*French Bank case*, 53 Cal. 550.) The appointment of a receiver is an

equitable remedy, purely ancillary and provisional, and bears the same relation to courts of equity that proceedings in attachment bear to courts of law. That there must be an action pending seeking some specific relief to which the appointment of a receiver is merely ancillary would seem too clear to require the citation of authority. A glance at the complaint upon which the receiver was appointed in this case suffices to disclose that the plaintiff seeks no relief, either legal or equitable, against the relator, or any of the defendants in that suit. No facts are pleaded upon which a judgment of any character or description could be rendered against the defendants therein or either of them. There being no "action pending" in the eighth judicial district court "by a creditor to subject any property or fund to his claim," or an action of any other nature, the appointment of a receiver of the property of relator by that court was an excess of jurisdiction, and for that reason the order should be annulled. (*Jones* v. *Bank of Leadville*, 10 Col. 473.)

*Toole & Wallace*, for Respondent.

The district court having jurisdiction in "all cases at law and in equity" (Const., art. VIII, § 11), it follows that the only question for consideration on this writ is whether this action was of the character defined by section 229 of the Code of Civil Procedure. This section is divided into six subdivisions, of which the sixth has been decided by the California courts to be useless, because their constitutional provision like ours gives jurisdiction in all cases in equity. (*Bateman* v. *Superior Court*, 54 Cal. 285–88.) The same case likewise determined that this subdivision is limited alone to cases of an equitable nature. But they further expressly declare that the other five subdivisions, with the possible exception of the fifth which was held meaningless in the *French Bank case*, 53 Cal. 495, confer enlarged additional powers on the court, and empower it to appoint a receiver in any actions falling within their classification whether they be actions at law or in equity. That the statute has greatly enlarged the power of the court and extended it to legal as well as equitable actions, is also announced in *John L. Roper Lumber Co.* v. *Wallace*, 93 N. C.

22–27.  By the words "action pending," as used in section 229, which declares that a receiver may be appointed by the court in which an action is pending, is meant simply that a complaint must be on file in the court.  (*Merchants' etc. Bank* v. *Kent,* 43 Mich. 295; *Baker* v. *Backus,* 32 Ill. 98.)  Here there were three actions pending; two actions at law by Phelps and the Mercantile Company.  In New York, where the statute required the application to be made upon petition, and instead of a petition a second complaint was filed, the court said: "That being filed in the same court in which the former suit was pending, the second complaint would be treated as a petition to the same court, and would be so regarded." (*Morgan* v. *New York etc. R. R. Co.,* 10 Paige, 293; 40 Am. Dec. 244.)  And so if the action at law by Phelps, with its ancillary attachment of property, would be of such a nature that in it the court might exercise the power of appointment. this third complaint, filed by the Mercantile Company against the plaintiff and defendant in that suit and the officers who levied the process therein  would, if necessary, be deemed a petition in that action addressed to the same court.  As to the nature of these actions, we insist: 1. That even were there no statute in existence, such as section 229, yet the third complaint develops an equitable action of such a nature as that under the constitutional power, and in accordance with rules of equity the appointment was authorized; 2. That any of the three actions so pending are of the kind referred to in subdivision 1 of section 229.  And, unless both of the above propositions are determined adversely this writ must be denied.  It becomes material at the outset to inquire as to the nature— whether legal or equitable—of the interest acquired by us by this second levy, because if equitable, then possibly plaintiff could not come into an action at law then pending between others, to enforce or protect a right purely equitable; and in such event the third suit was not only proper, but necessary. "Whatever interest defendant has in the property seized, whether it be legal or equitable in its nature, is all the lien affects."    (Wade on Attachment, § 30.)    Here the Phelps levies had attached as a lien to this property, and was an existing lien when plaintiff's levy was made; so it is clear our levy

only took hold of the equitable interest of the relator, remaining after the property has satisfied Phelps' claim. Discussing the question of the old chancery practice, in the absence of statutory powers, as to the right of a court at the instance of a creditor, other than a judgment creditor to appoint a receiver, Mr. Pomeroy, in 3 Pomeroy's Equity Jurisprudence, section 1334 says: "In suits by creditors, although not strictly creditors, actions by judgment creditors, brought to enforce their demand from their debtors' property, under some very special circumstances, involving great danger of loss, such as the debtors' nonresidence and the like." While Mr. Beach, in his work on Equity Practice, just published (sec. 719), speaking of the property over which, by the same practice, a receiver might be appointed, says: "The property a receiver is most commonly appointed to take charge of is, first, property levied on by attachment or execution, and liable to perish or deteriorate pending the suit." These are late works, and evidence a broadening of the old doctrine, legitimately growing out of the principle on which it was founded. The old general principle of chancery, denying relief to other than judgment creditors, rested on the idea that they must have a specific lien in the particular property they sought to thus protect, and as attachments were then unknown, this could only be acquired by a creditor after judgment. Says High, in his work on Receivers, section 406: "Courts of equity will not permit any interference with the right of the citizen to control his own property, at the suit of creditors, who have acquired no lien thereon, and whatever embarrassments the creditor may experience by reason of the slow procedure of the courts of law must be remedied by legislative, not by judicial, authority." Our legislature has done so by section 229. But this general doctrine was, even in the early periods, subject to exceptions growing out of peril to the property, thus imperiling the satisfaction of the creditor's claim. (High on Receivers, § 476, p. 278, note 2.) Where a creditor acquired a specific lien, he was before judgment, in the absence of any statute, granted a receiver, on showing that otherwise his lien was in peril. (High on Receivers, § 408.) So in an action by her general creditors to charge a sole trader's assets where there was a dan-

ger of the assets being wasted or put beyond the reach of creditors. (*Todd* v. *Lee*, 15 Wis. 365.) Speaking of the above case, Mr. High says: "Such a proceeding, it is held, bears a close resemblance to a creditor's bill for the enforcement of a judgment, and there would be no impropriety in granting an injunction and a receiver upon the same grounds as in cases of creditors' bills." (High on Receivers, § 409.) "If a creditor has a lien or charge upon the property of the debtor, even though his demand may not be reduced to judgment, he occupies a different relation from that of a mere contract creditor, and may properly invoke the preventive powers of the court for his protection." (High on Injunctions, § 1404.) "What we have above quoted from books of the highest authority proves two propositions: 1. That in case of pressing emergency a court may appoint a receiver before answer filed; and 2. A receiver may be appointed wherever the complainant has a lien, or a specific right to have the property or funds in controversy applied to the payment of his claim." (*Weis* v. *Goetter*, 72 Ala. 261.) That the old chancery doctrine was based on the lien on specific property, and the danger of its deterioration or injury is clearly announced in 2 Story's Equity Jurisprudence, §§ 843, 845, 851. Attempted fraud will always be prevented by a court of chancery at the instance of any one about to be injured thereby. So that this single feature in this case, i. e., the intended fraudulent conversion to his own use by the relator of the wool and its proceeds, of itself and alone, regardless of the other grounds presented by the bill, gives the court jurisdiction and power. This third complaint is nothing more or less than a bill *quia timet*, and would have been so termed under the old chancery practice. (2 Story's Equity Jurisprudence, §§ 825–27, 829, 845, 846.) Wherever the element of fraud intervenes courts of equity always have jurisdiction, and will exercise it even though plaintiff has a remedy at law. (*Chautauqua County Bank* v. *White*, 6 N. Y. 236; 57 Am. Dec. 442.) A receiver will be appointed even over the corporation itself, where fraud is shown in the defendant, and the fund is in danger of being wasted or misapplied. (Boone on Corporations, § 172; *Baker* v. *Backus*, 32 Ill. 95; High on Receivers, § 347.) The necessity of notice

before appointment is dispensed with in cases of fraud. (*Sims* v. *Adams*, 78 Ala. 397; *Ashurst* v. *Lehman*, 86 Ala. 371; *Fricker* v. *Peters etc. Co.*, 21 Fla. 254.) So, likewise, as to a showing of speedy danger of loss or lessening value. (*Oil Run Petroleum Co.* v. *Gale*, 6 W. Va. 527, 545.) Continuing heavy expense will even justify appointing without notice. (20 Am. & Eng. Ency. of Law, 26; Beach's Equity Practice, § 730, note 3; *Hendrix* v. *American Freehold etc. Co.*, 95 Ala. 313.) The aid of a receiver is sometimes granted in cases of mines and colleries pending a litigation which is to determine the title and right of the parties, when, from the peculiar nature of the property, it is necessary that it should be kept in operation and preserved *pendente lite.* (High on Receivers, § 615; *Weis* v. *Goetter*, 72 Ala. 259; Tiedemann on Equity Jurisprudence, § 579.) But we are not compelled to rest this question alone upon the general equity powers of the district court, because they have been considerably broadened out by a statutory enactment of this state (Code Civ. Proc., § 229, p. 115), one clause of which reads: "In an action by a creditor to subject any property or fund to his claim," and where it is shown that the property or fund is in danger of being lost, removed, or materially injured." Clearly the object of an attachment suit sued out by a creditor in a suit at law upon his debt is to set aside a part of his debtor's property so that this special property shall be subject to the payment of his claim when established by judgment. As an attachment cannot be had except in an action first brought, if, simultaneously with the beginning of a suit, an attachment is sued out and levied, the natural, logical, and legal inference is that the action is brought with a view of subjecting part of his debtor's property to his claim. In interpreting this clause of the statute of its own state the supreme court of Texas has announced that while a mere general creditor would not be within the purview of the clause an attaching creditor would be. (*Carter* v. *Hightower*, 79 Tex. 135.) In a suit brought by mere general creditors, having no liens, to obtain relief and a receiver, the court says: "But no mere outsider, not having an attachment lien himself, can interfere for that purpose." (*State* v. *Superior Court*, 7 Wash. 77.) The foregoing, though negative, cases would seem

to clearly indicate that when a creditor has brought suit on his demand and gotten his writ levied on part of the assets of his debtor, an action is thenceforth pending in that court by a creditor to subject the property or fund to his claim. And in that action therefore, if his right were founded on a first levy, i. e., legal in its nature, the property in danger of being materially injured, he could apply for a receiver. Our lien, however, arising on a second levy and being equitable in its nature, made it necessary to bring the second suit, and in this second action it was proper to make Phelps a party, though admitting the priority of his lien. (*Miltenberger* v. *Logansport etc. R. R. Co.*, 106 U. S. 306.) A further clause of the same subdivision of section 229 reads: "In an action between partners or others jointly owing or interested in the property or fund, on the application of the plaintiff, or any party whose right to or interest in the property or fund, or the proceeds thereof, is probable." It is clear that we come within the operation of this latter clause, being interested with the relator in the property or fund involved in the action.

*A. J. Shores*, also for Respondent (on rehearing).

Upon an examination of the opinion of this court, heretofore filed, it seems to us that the opinion proceeds upon the theory that if the remedy at law is adequate there is no jurisdiction in equity, and that hence it is competent upon a writ of *certiorari* for this court to examine the complaint filed with a view of ascertaining whether the remedy at law was adequate. This we think is a mistaken view as to the function of the writ of *certiorari*, and involves a fundamental mistake as to what constitutes jurisdiction in a court. We think where a complaint is filed in equity the objection that the remedy at law is adequate, and there is no need for the interference of a court of equity, is merely a matter of defense to the bill, and does not go at all to the jurisdiction of the court to act upon the complaint and determine whether a cause of action was stated that will require an equitable remedy. (*Grignon* v. *Astor*, 2 How. 319; *Hollins* v. *Brierfield Coal etc. Co.*, 150 U. S. 371; *Mellen* v. *Moline Malleable Iron Works*, 131 U. S. 352; *Reynes* v. *Dumont*, 130 U. S. 354; *Kilbourn* v. *Sunder-*

*land*, 130 U. S. 505.) The true inquiry should be whether, in the case at bar, the court had jurisdiction of the parties and of the general subject matter of the litigation and power in a proper case to grant the relief which it did grant. Upon *certiorari*, under our practice, the question before the court is, Are the proceedings of the court below of such character as to render them null and void and assailable, collaterally? (*McNitt* v. *Turner*, 16 Wall. 352; *Grignon* v. *Astor*, 2 How. 319.) In the case at bar proceedings were regularly instituted in the district court by the filing of a complaint upon the part of the Severance Mercantile Company as plaintiff, against James O'Marr and others as defendants, wherein certain facts were set forth upon which the plaintiff claimed the right to certain relief. The complaint set forth that the plaintiff had acquired a certain interest in specific property therein referred to; that the defendants had or claimed to have certain interests in the same property, and other facts were set forth which, in the opinion of the plaintiff, made it necessary, for the protection of all the parties to the suit, that the court should take possession of the property and appoint a receiver over it, and grant other relief. Now, the subject matter of this application was clearly within the jurisdiction of the court and the parties were before it. It was for that court to determine whether, upon the facts stated, the relief ought to be granted; that is to say, whether a cause of action was stated of equitable cognizance. It might have been objected, and perhaps was objected, upon the application for the appointment of a receiver in the court below, that the facts stated were insufficient. It might have been objected, and probably was objected, that the remedy at law was adequate. But, was it not clearly within the jurisdiction of the district court to pass upon these objections and determine whether they were good or bad? The court may have erred. It may have been of the opinion that the remedy at law was inadequate, and that the case was a proper one for the granting of equitable relief, when, in the opinion of this court, upon the facts stated, no sufficient grounds were assigned for the granting of equitable relief. If the lower court committed an error of this character, such error is not reviewable upon

*certiorari,* but must be reviewed, if at all, upon appeal. If the law provides no remedy by appeal, then the decision of the district court is final. In the case at bar, if the defendants in the suit had filed their answers consenting to the granting of the relief asked for, including the appointment of a receiver, it can hardly be pretended that the court's action in appointing a receiver would have been in excess of its jurisdiction, nor would any final judgment that it might have rendered in the action, disposing of the rights of the parties to the suit, have been a nullity. Nor would any sale that might have been made by the receiver under the order of the court fail to pass title to the property. Yet, it is a familiar doctrine that consent cannot confer jurisdiction over the subject matter and the validity of the court's judgment and of such a sale could not arise out of the mere consent of the parties to the proceeding. In *Pressley* v. *Lamb,* 105 Ind. 171, it was objected: 1. That the court had no power to entertain the application for the appointment of a receiver in vacation; and 2. That the complaint in the action between the partners in which the receiver was appointed did not show any actual controversy between them and no cause of action, nor any facts justifying the appointment of a receiver. Neither of these objections were sustained. (See, also, *Cook* v. *Citizens' National Bank,* 73 Ind. 256.) We think it has undoubtedly been the practice in this state, from the beginning, to appoint receivers over attached property in cases where, in the opinion of the court, full protection to the interest of all parties concerned made such a proceeding necessary or advisable. It can hardly be held that judgments and decrees heretofore rendered in such proceedings and sales made under them are to be treated as nullities, because upon an examination of the record in such proceedings it might appear to this court that there was no real justification for going into equity; that the remedy at law is adequate. Personal property of great value and much real estate have been sold under judgments and decrees and orders of this character. Are the titles acquired at these sales subject to be held invalid if, upon collateral attack, it should appear that the remedy at law was adequate? That is to say, is the judgment of the district court upon the question as to

whether the remedy at law is adequate, when such question is presented to it in an action regularly instituted in that court, to be held as rendered within its jurisdiction only when it determines the question right? If it commits an error in the opinion of this court in holding that the case presented is a case where the remedy at law is not adequate, can it be held that there was no power or jurisdiction in the lower court to pass upon that question? Or, in other words, can it be held that the district court has no jurisdiction merely because the complaint fails to state a cause of action? The *French Bank case,* 53 Cal. 495, is much relied upon by the relator; but even if the various propositions upon which the court's decision in that case is based could be accepted without modification, it furnishes no precedent for annulling the proceedings in the district court in the case at bar upon *certiorari.* In the French Bank case the court held that the order made in the lower court appointing a receiver of the French Bank had the effect to dissolve the corporation. The court then proceeds to hold that this order of the district court, which it views as in effect dissolving the corporation, should be annulled upon *certiorari,* for the reason that there is no jurisdiction vested in courts of equity to dissolve corporations at the suit of a private person. Now, we may concede that a court of equity has no inherent power to decree the dissolution of a corporation in such a suit; that the matter of dissolving corporations at suit of private parties must be provided for by the legislature, which, of course, may make provisions for such proceedings, to be had either in a court of law or in a court of equity. If no legislation has been had which authorizes a court of equity to dissolve a corporation in such a suit, and if there is no inherent jurisdiction in a court of equity to dissolve corporations, manifestly a judgment or decree of such a court dissolving a corporation at the suit of a private party would be in excess of its jurisdiction, and clearly something to be annulled upon *certiorari.* If a proceeding were instituted in a court of a justice of the peace to dissolve a corporation, and an order or decree or judgment should be entered in such court, the effect of which, if valid, would be to dissolve a corporation, such proceedings would clearly be annulled upon

*certiorari*, for the same reason that the proceedings would be annulled if had in a court of equity, viz: that neither of such courts has ever had any jurisdiction to grant relief of that character, or to render a judgment of that nature. If, in the case at bar, the order of the district court appointing a receiver over the property covered by the attachments in legal effect dissolved the New York Sheep Company, and if the supreme court of California is right in holding that there is no jurisdiction in equity to dissolve corporations in private suits, clearly the order of the district court appointing a receiver may be annulled upon *certiorari*, for the reason that it is in excess of the jurisdiction of that court. But if this court should be of the opinion and hold that the order of the court below, if sustained, would not operate to dissolve the New York Sheep Company, then the French Bank case cannot be regarded as a precedent for annulling such order upon *certiorari*. That the appointment of a receiver in an equity suit, over the property of a corporation, has no such effect as to dissolve the corporation has been repeatedly adjudged. (*Decker* v. *Gardner*, 124 N. Y. 334; *Kincaid* v. *Dwinelle*, 59 N. Y. 553; *Pringle* v. *Woolworth*, 90 N. Y. 502; Beach on Receivers, § 335; *Ohio etc. Ry. Co.* v. *Russell*, 115 Ill. 52; *State* v. *Merchant*, 37 Ohio St. 251.) If the views advanced above are sound, the questions raised by the relator are not jurisdictional questions. As to relator's argument that the remedy at law was adequate, it may be observed: 1. That there is no ground for assuming that the legislature intended to abridge to any extent the jurisdiction of our courts of equity, or to in any way modify their practice; and 2. That a legislative intent clearly expressed to cut down the equitable jurisdiction of our district courts could not prevail, since such jurisdiction is derived from the constitution, and is not subject to modification at the will of the legislature. The legislature may doubtless add to the remedies now existing. It may also extend old remedies to new cases. It may authorize the appointment of a receiver in a case where the court would not, sitting as a court of equity, in the exercise of its jurisdiction as such, appoint a receiver. But it cannot take away from the district court the power conferred upon it by the constitution, nor has it intended to do so. On the

contrary, after providing for the appointment of receivers in some cases where receivers would not have been appointed by the district court in the exercise of its general equity jurisdiction, the legislature has shown its intention not to abridge or attempt to abridge the power of the court in this regard, by declaring that a receiver may be appointed "in all other cases where receivers have heretofore been appointed by the usages of the courts of equity." (1 Story's Equity Jurisprudence, 13th ed., 69, 89.) It is true that the granting of equitable relief is largely a matter of discretion in the court, and it may be that in the exercise of such discretion a court of equity might refuse to appoint a receiver in a case where it was apparent that the remedy furnished by these statutes was ample and adequate; but the right to appoint a receiver is in no wise limited by these statutory provisions, and in the exercise of its discretion the court might, without error, appoint a receiver to do just what the sheriff is authorized to do by the terms of these acts. Again, the relator has contended that courts of equity have never appointed receivers over property already in the custody of the law under attachment; that is to say, that there is no precedent for the exercise of equitable jurisdiction over such property. In this the relator is mistaken, but even if he were not mistaken it would by no means follow that the action of the lower court was erroneous. The question is whether the principles upon which the equitable relief is granted justify the action of the court, not whether some case exactly similar in its facts can be cited wherein such relief has been granted. In 2 Beach's Modern Equity Practice, page 703, under the head of "Property over which a receiver may be appointed," nine or ten classes are enumerated, the first of which is "Property levied on by attachment or execution, and liable to perish or deteriorate during pendency of suit." The whole of this paragraph is apparently quoted from Gibson's Suits in Chancery, section 844. The propriety of appointing a receiver over such property seems to have been very seldom questioned. It has been done innumerable times by the district courts of this state, and yet this is the first case in this court where any doubt has been suggested as to the correctness of the practice. The principle upon which courts of equity

have acted in appointing receivers over such property is one of
the most familiar in equity jurisprudence.   Courts have not
only appointed receivers over attached property to prevent loss,
but have gone much farther, and appointed receivers over prop-
erty for the purpose of preventing attachments and the loss
consequent upon the enforcement of strict legal remedies.
Cook, in his work on Stockholders, 3d edition, volume 2, sec-
tion 863, page 1415, says: "The power of the court to appoint
a receiver of a railroad which is in financial difficulties, the
purpose of the appointment being to preserve the property and
prevent attachments and executions in order that it may be
extracted from its financial difficulties, and its old resources or
new money made available, seems to be established.   Such was
the purpose and result of the appointment of a receiver of the
Reading Railroad in 1893, and such was the object in the
appointment of a receiver of the Central Railroad and Bank-
ing Company of Georgia in 1892."   The case last referred to
is *Clarke* v. *Central R. R. & B. Co.*, 54 Fed. Rep. 556.   In
the case last cited, the court says, respecting that receivership:
"The receivership, as it then existed, constituted a trust of a
somewhat unusual but entirely salutary character.   It was cre-
ated, as stated, in an effort to tide over the unpleasant diffi-
culties of vast, valuable, and probably solvent, though badly
embarrassed, properties, an embarrassed condition, mainly
occasioned by lawful causes."   So in the case of the Wabash
road, a receiver was appointed for the sole purpose of prevent-
ing execution and attachment levies and foreclosures that
might be instituted against portions of the property owned by
the company; not, of course, with a view to defrauding the
creditors, but in order that the whole property might be
administered by a court of equity through a receivership, the
best possible price realized, and all debts paid in full.   ( *Wabash
etc. Ry. Co.* v. *Central Trust Co.*, 23 Fed. Rep. 513; *Central
Trust Co.* v. *Wabash etc. Ry.*, 29 Fed. Rep. 623; *Quincy M.
& P. R. R. Co.* v. *Humphreys*, 145 U. S. 82; *St. Louis etc.
R. R. Co.* v. *Humphreys*, 145 U. S. 105.)   In the cases last
cited, receivers were appointed for the purpose of· preserving
property from probable loss consequent upon the enforcement
of ordinary legal remedies, and before suit brought for the

enforcement of such claims.   The Wabash case is the best
known and most discussed of these cases, and has been subject
to a great deal of criticism from divers sources, as an unprece-
dented and an unwarranted exercise of power by a court of
equity.   The supreme court of the United States did not
in either of the cases above referred to directly pass upon
the question whether the lower court committed an error
in originally entertaining the proceeding and appointing a
receiver over the property of the company.   But the action of
the supreme court in affirming the orders of the lower court in
the administration of the receivership clearly shows that in the
opinion of the supreme court there was no lack of jurisdiction
in the lower court to do what it did.   Whether, if the ques-
tion had been directly presented to the supreme court it would·
have sustained the order appointing a receiver or held it error,
is not so clear.   In the case at bar we do not ask the court to
go as far as was done in the Wabash and other cases above
cited.   The property in which the plaintiff has an interest, or
upon which it has acquired a lien, is threatened with dissipa-
tion under a prior levy, the time of the application for the
appointment of a receiver, other suits were actually pending
against the debtor for the enforcement of demands against it,
under which its property had been seized.   In *Union Trust
Co.* v. *Illinois Midland Ry. Co.*, 117 U. S. 434, the receiver
was appointed after the levy of attachments and executions
upon various portions of the company's property, and that such
appointment was made for the purpose of preserving the prop-
erty from loss liable to occur through the enforcement of such
attachment and execution levies.   From the cases above cited
it appears that the supreme court of the United States has
taken the view: 1. That a court of equity does not exceed its
jurisdiction in appointing a receiver over property in antici-
pation of, and for the purpose of, preventing the same from
being seized by attachment and execution, where the character
of the property and its situation is such that material loss is
likely to result to the parties interested in it if disposed of on
attachment and execution sales; 2. That after seizure of such
property upon attachment and execution levies a court of
equity not only has jurisdiction to appoint a receiver over it

for the purpose of preventing loss, but its action in appointing such receiver will be sustained and held not erroneous, where the bill makes it apparent that such course will tend to prevent loss to the parties interested in the property. In the opinion heretofore filed the court assumes that the application for the appointment of a receiver in this case should be regarded as in the nature of a motion in the attachment suit already pending rather than an application made in a new suit in equity. It would doubtless be permissible to treat the application in this way if the filing of the complaint of the Severance Mercantile Company against James O'Marr and others, the issuance of summons thereon and the service or appearance of the defendants, therein cannot be regarded as the institution of an action. But wherein is there any thing lacking to constitute this proceeding an ordinary action in equity? What is required to be done to institute suit beyond the filing of the complaint and issuance of the summons? And what is essential to give the court jurisdiction of the proceedings beyond this, and the service upon the defendants or their voluntary appearance? We see no necessity for treating the application for the appointment of a receiver as a motion made in one of the prior attachment suits, and there are certainly serious difficulties in regarding it as such, since Phelps was not a party to the attachment suit instituted by the Severance Mercantile Company, nor was the latter a party in the Phelps attachment suit. It is not a new thing for one court to take action in aid of proceedings in another, as in the appointment of ancillary receivers. (Beach's Modern Equity Practice, § 713. See, also, the *Wabash cases*, 22 Fed. Rep. 272; 23 Fed. Rep. 514; 29 Fed. Rep. 618; 145 U. S. 82, 105; *Phinizy* v. *Augusta K. N. R. Co.*, 56 Fed. Rep. 275; *Decker* v. *Gardner*, 124 N. Y. 334.)

DE WITT, J.—The question of the discretion of the district court is not before us, so it may be considered as a conceded fact that it was properly shown to the district court that the sheep were in danger of suffering material loss and injury if left in the hands of the sheriffs, and that the appointment of a receiver would tend to avoid this loss and injury.

We will turn our attention for a moment to one matter which we meet at the threshold of this case. It seems that the Severance Mercantile Company filed a complaint, and commenced a separate action, asking to have this receiver appointed. It is objected that there is no such thing known as an action for the appointment of a receiver, but that such appointment is ancillary to another action; that is, an action of such a nature that a receiver may be appointed therein. (*French Bank case,* 53 Cal. 495; *Jones* v. *Bank of Leadville,* 10 Col. 464.) But perhaps it would be fair to regard what appears to be a complaint of the Severance Mercantile Company against the New York Sheep Company, Phelps, and the two sheriffs, as simply a petition or application of the Severance Mercantile Company, looking to an appointment of a receiver in the case which was already pending in the district court, namely, the Severance Mercantile Company against the New York Sheep Company. We are willing at least to so regard the situation of the parties. Then, the question of discretion not being under review, it remains to be decided whether, under the facts shown, the court had jurisdiction to appoint this receiver; that is to say, the question is this: If two creditors each sue one and the same debtor on simple money demands, and each creditor sues out in his case a writ of attachment, under which writs two sheriffs of different counties levy upon property of the debtor in their respective counties, then has the court jurisdiction to appoint a receiver of the property so attached and held by such sheriffs?

It is also conceded, of course, that the showing was made of danger of loss and material injury. Stated more simply, the proposition perhaps may be reduced to this: In an action on a simple money demand, for a plain money judgment, in which action property has been attached, has the court power to appoint a receiver of the attached property, if it appears that there is danger that it will be materially injured?

The statute—quoting the portion which is pertinent, or which was relied upon by respondent—is as follows: "A receiver may be appointed by the court in which an action is pending, or by the judge thereof: 1. In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor

to subject any property or fund to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of any party whose right to, or interest in, the property or fund, or the proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed, or materially injured. . . . . 6. In all other cases where receivers have been heretofore appointed by the usages of courts of equity." (Code Civ. Proc., § 229.)   Counsel for the respondent said that he relied partly upon the sixth subdivision of the section.   But it is scarcely seriously urged that the appointment of the receiver was justified by that subdivision of the section, or that receivers have heretofore been appointed by the usages of courts of equity in a simple law action on debt.   The California supreme court said, in reference to this subdivision, as follows: "The five subdivisions containing such specifications are followed by the sixth, which provides for the appointment where 'receivers have heretofore been appointed by the usages of courts of equity,' which expression we may conceive to be equivalent of that employed in the third subdivision of the one hundred and forty-third section of the former Practice Act—'such cases as are in accordance with the practice of courts of equity jurisdiction.'   Either of these expressions simply means that, in addition to the particular instances mentioned in the preceding subdivisions, the appointment should be made by the district court, as a court of equity, in the other suits in which the power could have been employed had there been no statute on the subject, and cannot be construed as authorizing the appointment in an action at law." (*Bateman* v. *Superior Court,* 54 Cal. 285.)

Counsel for respondent next urge that authority for this appointment is found in subdivision 1 of section 229.   Before proceeding to read that subdivision, we remark, in passing, that there is some argument of expediency as to the making of the appointment of the receiver in this case as well as in, perhaps, other actions of debt where there are numerous attachments of property.   That argument should, of course, be addressed to the law-making department of the government, and cannot be seriously entertained by a court when it stands

in the face of plain language of a statute. We have examined our statute with some assiduity in search of the power of the district court to make this appointment, for we believe that the discreet exercise of such a power would sometimes be beneficial; but we cannot find the power given by the law. But the attachment law is not unmindful of the care and disposition of the attached property. A bond must be given by the party attaching. (Code Civ. Proc., § 182.) The sheriff is under the duty to "safely keep" the property. (Code Civ. Proc., § 184.) The sheriff is an officer of the court, and subject to the court's proper orders. Again, if it appear to the court that the interests of the parties will be subserved by a sale of the attached property, the court may, upon determining such fact upon a hearing of both parties, order the property sold as property is sold under execution. (Code Civ. Proc., § 541.)

We will then proceed for a moment to analyze the statute. Turning again to subdivision 1, section 229, it is observed that the first sort of case in which a receiver may be appointed is in an action by a vendor to vacate a fraudulent purchase of property. This, of course, may be passed without comment. Next, we find that a receiver may be appointed in an action by a creditor to subject any property or fund to his claim. We should be inclined to say that this might be passed without comment, were it not that counsel for the respondent has relied upon it. We therefore examine it a moment. The action here was a simple one of debt. Surely it cannot be contended that a simple action of debt, asking only a straight money judgment, is an action by a creditor to subject property or a fund to his claim. The action is not for such a purpose. It does not seek such relief. There is nothing about such an action which looks to an obtaining of the relief of subjecting a fund or property to the plaintiff's claim. Nor does the fact that a writ of attachment was issued change the nature of the action from a money demand to one for the relief of subjecting a fund to plaintiff's claim.

Again, it has been suggested that the following portion of subdivision 1, section 229, is sufficient to grant the power to the district court. The portion reads as follows: "A receiver

may be appointed, . . . . in an action . . . . between partners, or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of any party whose right to, or interest in, the property or fund, or the proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed, or materially injured." But no partners are concerned here, and no other persons jointly owning any property or funds. Omitting these words, the statute, for the purposes and facts of this case, would read: "A receiver may be appointed . . . . in an action . . . . between persons jointly interested in any property or fund, on the application of," etc. Does this portion of the section give authority to appoint a receiver of property attached in a simple money demand action? We do not think such view should obtain. Is the action between persons jointly interested in any property or fund? It seems not. The action has nothing to do with property of any one, or of any kind. No property is the subject of litigation. The action is upon a debt only, and seeks only a money judgment. The plaintiff and defendant in such an action are not jointly interested in any property or fund, so far as any thing appears in the action. It is true that when the action was commenced a writ of attachment was issued ancillary thereto, and in pursuance to such writ property was seized by the sheriffs, to be by them held to answer any judgment that plaintiff might obtain. Does this ancillary circumstance inject into the action the fact that the action is between parties jointly interested in property or a fund? It does not seem to us that it does. The action not being about property at all, the issuance of an attachment does not change the nature of the litigation, and convert it into an action between persons jointly interested in any property. We think the section means that the action must be in regard to property in which the parties are jointly interested. The whole context indicates this. The context speaks of "between partners" and "others jointly owning" and "others jointly interested." It is actions between such people that are being described. We think the section certainly means that the action here described, in which a receiver may be appointed, is one in regard to property or a fund in

which there is a joint interest of the parties. The only possible construction by which this portion of the section could be made to apply to such an action as the one before us is the holding that the creditor and debtor, plaintiff and defendant, in an action on a money demand, and for a simple money judgment, are "jointly interested" in property which is not the subject of the action, but is confessedly the sole property of the defendant, and in which the plaintiff has no rights whatever except what rights it may be held that he obtains by virtue of the fact that the sheriff has seized said property under writ of attachment; that is to say, it must be held that an attaching creditor has a joint interest, within the contemplation of the statute, with defendant in defendant's property which has been attached. We do not think that such plaintiff has such joint interest as is contemplated by the statute. We do not think the statute, in its text and context, conveys this meaning. The plaintiff, by attachment, has acquired a right to have the property held by the sheriff awaiting the judgment, but we cannot think that he has such a joint interest in the property as this statute had in view when it spoke of partners and other persons jointly owning or interested in any property. If the legislature had intended to give the power to appoint a receiver in attachment suits it is such an important matter that it would seem that they would have mentioned it.

The California supreme court said, as to a kindred subject: "If it had been intended to confer the power to appoint an officer of that character [a receiver] in an action at law for the recovery of the possession of real property, it is not credible that the legislature would not have said so in terms, since it was apparent that it was their purpose to specify all cases, whether at law or equity, in which receivers could be appointed." (*Bateman* v. *Superior Court,* 54 Cal. 289.) The court was construing a statute similar to our own. Therefore, upon such analysis as we are able to give subdivision 1 of section 229 of the Code of Civil Procedure, we cannot find therein the jurisdiction to appoint the receiver in this case.

There seems to be nothing in the further portion of the subdivision which is applicable. The rest of the language states

on whose application the receiver may be appointed. The section has already stated the kinds of action in which the appointment may be made. These we have considered. Then it states on whose application, and under what circumstances, the appointment may be made in such actions. The appointment may be made "on application of the plaintiff," or it may be made on the application " of any party whose right to, or interest in, the property or fund, or the proceeds thereof, is probable." (See the section, with subdivision 1, quoted fully above.) The statute, in this latter language, is not defining actions in which the receiver may be appointed. That it has done. Now it comes to defining who may make the application, and it says not only the plaintiff, but any party whose right, etc., is probable. If this part of the section which we are now considering does not relate to the first part of the section, and if it does not simply describe the persons who may apply in the sorts of action which have been before set forth; and if this portion is to be cut off from the proceeding; and if it is to stand alone as describing another condition when a receiver may be appointed, then the reading would be about as follows: "A receiver may be appointed in any action on the application of the plaintiff, or of any party whose right, etc., is probable, where it is shown that the property is in danger of material injury," etc.; that is to say, this construction would give the authority to appoint a receiver in any case where it was shown that there was danger of material injury to property. It may be expedient to have such a statute. It seems that Indiana has one as broad as this. (20 Am. & Eng. Ency. of Law, 59.)

But we do not think that subdivision 1 of section 229 would bear that construction. If such were the meaning of the statute, the word "or" would have been inserted before the word "on," at the top of page 116 of the Compiled Statutes, at the eighth line of the section. And the section would have read, in effect, that a receiver may be appointed in an action by a vendor to vacate, etc., or by a creditor to subject, etc., or between partners or others jointly interested, etc., "or" (this being the "or" that would have to be inserted) on the application of plaintiff, or of any party, etc., upon the danger of the

material injury shown. But the statute does not read in that way. The "or" as written in quotation marks in the above sentence is not in the statute. The section describes the sort of actions in which the receiver may be appointed, with the disjunctive "or" between the different sorts, and then goes on and states who may make the application in such actions, and under what circumstances in such actions. The section closes with the statement that to allow a receiver in the cases enumerated it must appear, furthermore, that there is danger of loss, etc. This clause of the section is introduced by the word "and," connecting it with the language preceding it, which is the language describing who may make the application in the cases which have been theretofore set forth. The descriptions of the sorts of actions in which the receiver may be appointed are all connected with the word "or," and not "and." This last clause of the section speaks of "the property or fund." The natural construction seems to us to be "the property or fund" which the section has theretofore mentioned. We do not think it is within the meaning of the section to cut off this last clause, and read it: "A receiver may be appointed in an action 'where it is shown that the property or fund is in danger of being lost, removed, or materially injured.'" Such a clause, so read, would be meaningless, for there would be nothing in it to indicate the nature of the action, or what was "the property or fund" referred to.

We cannot see any other reading of the statute than that which we have above pointed out, and such reading does not include the appointment of a receiver in such a case as the one before us. This does not seem to us to be construing the statute at all. It seems to be nothing further than reading its plain terms.

We are of opinion that this writ of *certiorari* should be granted, and that the order of the district court in appointing the receiver should be annulled.

PEMBERTON, C. J., concurs.

HARWOOD, J. (dissenting).—I dissent from such a narrow and rigid construction of the provisions of our remedial statutes

relating to the administration of justice in civil actions as will compel courts of original jurisdiction to permit damage and waste of property in *custodia legis*, by pursuing rigidly and inflexibly a certain method of administration, while such waste could readily be avoided without detriment to the rights of any litigant or others interested, but with advantage to all, by employing another well-known and usual method of custody and administration of the things involved in the litigation.

In the foregoing treatment it is conceded that by holding the attached property in the custody of several sheriffs, and without change of situation, great loss would be involved, which could be avoided by placing the property in the custody of a receiver. It has been the practice of trial courts for a long period in this jurisdiction to appoint a receiver in such a case, and put him in charge of the property attached and held under various attachment liens, where the conditions were such as to entail injury and loss if such method were not pursued.

The code provides in very broad and general terms that a receiver may be appointed in cases where partners "or others" are "jointly owning, or interested, in any property or fund, on the application of plaintiff, or of any party whose right to, or interest in, the property or fund, or proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed, or materially injured." (Code Civ. Proc., § 229.) In the face of this provision, and the further provisions of the code that all its provisions must be liberally construed, so as to work out substantial justice, and in the face of the conceded fact that unless the court interposes a receiver in this case great loss would result, and in view of the showing that the appointment of a receiver therein would avoid such loss and work great advantage to all parties concerned, still it is held by a majority of this court that no receiver can be appointed in such a case. In order to reach that conclusion it is unavoidably held by implication that attaching creditors who have by regular proceedings levied attachment liens upon property of their debtor, and who have a clear right (subject only to other direct liens in advance of theirs) to the funds or proceeds arising from such property, still have no "right or interest in" the property attached, "or

probable interest in the funds arising therefrom," in contemplation of the statute providing for appointment of receivers. If we were applying a provision of the Criminal Code, under the more rigid and technical rule applicable to the interpretation of criminal statutes, I hardly see how we could reasonably confine the broad and general language of the statute under consideration to such narrow limits.

ON REHEARING.

DE WITT, J.—Counsel on the argument on rehearing seem to have obtained the impression that the original decision was based upon the ground that the receiver should not be appointed because there was another adequate remedy. Whatever was said as to the creditor's rights and remedies under his attachment was simply a suggestion to meet counsel's argument *ab inconvenienti.* But the question of the expediency of giving the courts power to appoint a receiver in certain plain money demand actions is a matter to be addressed to the legislature, and not to the courts. In the original opinion we endeavored to make a plain, simple reading of the statute as to receivers. Reading that statute in whole, and not in part, we cannot find any authority to appoint the receiver in this case. As we remarked in the original opinion, such power might be beneficial in some cases. That subject we commend to the legislature, where only it belongs. It is ordered that the original decision shall stand.

PEMBERTON, C. J., concurs.